IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Brian Meixner; | ) | C.A. No. 1:06-CV-1359 |
| Clarke Jones; | ) | C.A. No. 1:06-CV-1360 |
| Warren Holland; | ) | C.A. No. 1:06-CV-1361 |
| Jerome Jenkins; | ) | C.A. No. 1:06-CV-1363 |
| Reba Temples; | ) | C.A. No. 1:06-CV-1364 |
| Julian Young; | ) | C.A. No. 1:06-CV-1366 |
| Bruce Myers and Susan Myers; | ) | C.A. No. 1:06-CV-1367 |
| Peter Haldezos and Irene Haldezos; | ) | C.A. No. 1:06-CV-1368 |
| Tom Thomas; | ) | C.A. No. 1:06-CV-1369 |
| Wanda Johnson; | ) | C.A. No. 1:06-CV-1370 |
| Daniel Shea and Debra Shea; | ) | C.A. No. 1:06-CV-1371 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | **OPINION AND ORDER** |
| | ) | |
| Emerson Electric Company; Automatic Switch Company; Therm-O-Disc, Incorporated; Richard H. Irvine; | ) ) ) | |
| | ) | |
| Defendants. | ) | |

Plaintiffs Brian Meixner, Clarke Jones, Warren Holland, Jerome Jenkins, Reba Temples, Julian Young, Bruce and Susan Myers, Peter and Irene Haldezos, Tom Thomas, Wanda Johnson, and Daniel and Debra Shea (collectively "Plaintiffs") separately brought these matters to the Court of Common Pleas, Aiken County, South Carolina on February 20, 2006 and March 20, 2006, alleging nuisance, trespass, negligence, and violation of the South Carolina Pollution Control Act.[1]

Defendants Emerson Electric Company ("Emerson"), Automatic Switch Company ("ASCO"),

---

[1] Defendants have filed motions to dismiss the cause of action that alleges a violation of the South Carolina Pollution Control Act. (Mot. to Dismiss (Entry 6).) In response, Plaintiffs "consent[ed] to withdraw their cause of action based upon violation of the S.C. Pollution Control Act. This consent will apply whether or not the case is remanded to State Court." (Resp. to Mot. to Dismiss 1 (Entry 9).)

Therm-O-Disc, Incorporated ("TOD"), and Richard H. Irvine ("Irvine") removed the actions on May 4, 2006. (Notice of Removal (Entry 1).) On May 11, 2006, Defendant Irvine moved the court to dismiss him as a party. (Mot. to Dismiss Irvine (Entry 7).)[2] Plaintiffs filed memoranda in opposition to Defendant Irvine's motions on May 30, 2006. (Reply in Opp'n to Mot. to Dismiss Irvine (Entry 13).) Plaintiffs also filed motions to remand for lack of complete diversity. (Remand Mot. (Entry 11).) Defendants filed a response in opposition to Plaintiffs' motions on June 9, 2006. (Reply in Opp'n to Remand Mot. (Entry 16).) A hearing was conducted on October 11, 2006. The matters were taken under advisement, and the parties allotted time to submit additional information to the court. (Min. Order (Entry 21).) Defendants filed additional memoranda with exhibits on October 18, 2006 and October 26, 2006, and Plaintiffs filed additional memoranda with exhibits on October 20, 2006. Plaintiffs further presented the court with an October 30, 2006 letter summarizing prior arguments.

## I.    FACTS.

Plaintiffs allege Defendants released contaminants from a manufacturing facility located at 1561 Columbia Highway in Aiken, South Carolina (the "Facility"). (Compls. ¶¶ 11-14.) Plaintiffs reside in close proximity to the Facility. (Compls. ¶¶ 1-2.) Plaintiffs allege:

> From approximately 1964 to 2006 and continuing, each Defendant, at respective times . . . released and discharged massive quantities of said hazardous and toxic substances, pollutants and contaminants into the environment, including the soil, groundwater, and surface water onsite at said plant site, which subsequently and ultimately spread

---

[2] As these actions were brought separately, different entry numbers often appear on the court's docket sheets for identical filings. The court has included those entry numbers which most often correspond to a particular filing. *See, e.g., Meixner v. Emerson Electric Co.*, Civil Action No. 1:06-1359 (D.S.C. filed February 20, 2006).

2

>     through Plaintiffs' community, and specifically onto Plaintiffs'
>     properties.

(Compls. ¶¶ 11-14.) Plaintiffs further allege that Defendants failed to remediate said pollution even though the toxic chemicals caused groundwater in Plaintiffs' respective properties to "exceed the maximum contaminant levels" as established by federal and state regulations. (Compls. ¶ 18.)

Defendant Emerson "owned and operated" the Facility. (Compls. ¶¶ 4-5.) Defendants TOD and ASCO are subsidiaries of Defendant Emerson. (*Id.*) With respect to the cleanup of the Facility's contamination, no TOD or ASCO employees were involved. (John Simon Aff. ¶ 5 (Ex. A, Mot. to Dismiss Irvine.) Instead, Defendant Emerson retained environmental consultants in 1991 for remediation of the Facility's contamination. (*Id.*)

Defendant Irvine, an employee of Defendant ASCO, began employment at the Facility in August 1991. (Richard Irvine Aff. ¶ 7 (Ex. B, Mot. to Dismiss Irvine).) At that time, Defendant Irvine served as the Facility's supervisor of valve production. (*Id.* at ¶ 8.) In 1998, Defendant Irvine was promoted to Director of Operations at the Facility. (*Id.*)

## II.     DISCUSSION.

Defendants contend that Plaintiffs fraudulently joined Defendant Irvine in order to defeat diversity jurisdiction. The burden on Defendants is heavy. *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993). Generally, to show fraudulent joinder, a defendant must demonstrate either that "there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court," or that there is "outright fraud in the plaintiff's pleading of jurisdictional facts." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999) (quoting *Marshall*, 6 F.3d at 232). Defendants allege no pleading fraud regarding jurisdictional facts,

therefore, the only inquiry is whether South Carolina courts would recognize a cause of action against Irvine. Plaintiffs need not establish ultimate success on claims against Irvine, but that there is "a slight possibility of a right to relief" against Irvine. *Id.* at 426.

Plaintiffs allege three claims against Irvine: (1) nuisance, (2) trespass, and (3) negligence. Defendants contend that South Carolina courts would not recognize a cause of action for nuisance against Irvine. The essence of the nuisance tort is that "[e]very citizen holds his property subject to the implied obligation that he will use it in such a way as not to prevent others from enjoying the use of their property." *Peden v. Furman Univ.*, 151 S.E. 907, 912 (S.C. 1930). A person is subject to liability for a nuisance caused by an activity, not only when he carries on the activity but also when he participates to a "substantial extent" in carrying it on. *Shockley v. Hoechst Celanese Corp.*, 739 F. Supp. 670, 674 (D.S.C. 1974); *see* RESTATEMENT (SECOND) OF TORTS § 834 (2006). For this reason, "one who has no control over property at the time of the alleged nuisance cannot be held liable therefor." *Clark v. Greenville County*, 437 S.E.2d 117, 119 (S.C. 1993). Here, as noted, the Facility did not employ Irvine at the time the alleged water contamination initially occurred or was initially discovered to be occurring. (*See, e.g.,* Richard Irvine Aff. ¶ 7 (Ex. B, Mot. to Dismiss Irvine).) Once employed, Defendant Irvine represents to "never possess[ing] nor exercis[ing] any decision-making authority over the investigation or remediation of the contamination at the Aiken Facility that is at issue in this lawsuit." (*Id.* at ¶ 14.) Thus, Plaintiffs have not alleged a cognizable nuisance claim against Defendant Irvine at this time.

Defendants further contend that South Carolina courts would not recognize a cause of action in trespass against Irvine. Generally, a person commits trespass when that person intentionally invades another's land without consent. *Snow v. City of Columbia*, 409 S.E.2d 797, 802 (S.C. Ct.

4

App. 1991). Trespass requires not only an affirmative act by the wrongdoer, but also that the wrongdoer know that trespass will result from such actions. *Id.* After all, "[t]he root idea of tort law is that the defendant must be 'in the wrong,' 'at fault,' 'unjustified,' 'blameworthy,' or 'culpable' for liability to attach to his conduct." *Id.* Plaintiffs allege that Defendant Irvine can be held "blameworthy," but there is no support in the record for a finding that Irvine intended to commit trespass or engaged in an act of trespass. For example, Irvine's employment began four years after discovery of the Facility's contamination of groundwater in and around Plaintiffs' properties. To the extent Plaintiffs contend the contamination is ongoing, there is no evidence that Irvine at any time since his employment participated in the alleged contamination. Thus, Plaintiffs have not demonstrated sufficient facts at this time to state a cause of action of trespass against Irvine.

Finally, Defendants contend that a South Carolina court would not recognize a negligence claim against Irvine. To prove the tort of negligence, Plaintiffs must present evidence that Irvine had a legal duty to Plaintiffs and breached such a duty. *Thomasko v. Poole*, 561 S.E.2d 597, 599 (S.C. 2002). Typically, while a corporation can be held liable to a third party for an employee's job-related acts, an employee is not liable to that third party. *Norwood v. Carolina Power & Light Co.*, 74 F. Supp. 483, 485-86 (D.S.C. 1947). However, employees charged with operating a premises may have legal duties of reasonable care to a third party with respect to an allegedly dangerous condition, like environmental contamination, and can be liable for breach of their duty. CORPUS JURIS SECUNDUM NEGLIGENCE § 397 (2006); *see Benjamin v. Wal-Mart Stores, Inc.*, 413 F. Supp. 2d 652 (D.S.C. 2006). In evaluating the legal duty of a managerial-level employee to a third party, courts consider "the individual's power or authority to manage, direct, superintend, restrict, regulate, govern, administer, or oversee the management of the property." *Benjamin*, 413 F. Supp. 2d at 656.

As noted, Irvine had either a very limited role or a nonexistent role in events leading to this litigation. The environmental contamination alleged began in 1964 and was discovered by Defendants in 1987. (Compl. ¶ 11; *see also* Mot. to Dismiss Irvine.) Irvine began employment at the Facility in 1991. Though promoted to a managerial position in 1998, Irvine, an employee of Defendant ASCO and not of Defendant Emerson, has averred that he exercised no control over activities allegedly causing harm to Plaintiffs. Thus, Plaintiffs fail to demonstrate any possibility that a negligence claim is cognizable against Irvine in South Carolina state court.

### III.  CONCLUSION.

For the reasons stated, the court concludes that Irvine is a fraudulently joined Defendant. Accordingly, Irvine will be dismissed as a Defendant without prejudice for purposes of finding diversity jurisdiction. Plaintiffs' Motions to Remand (Entry 11) are **denied** without prejudice, and Defendant Irvine's Motions to Dismiss (Entry 7) are **granted** without prejudice. Finally, as Plaintiffs "consent[ed] to withdraw their cause of action based upon violation of the S.C. Pollution Control Act," Defendants' Motions to Dismiss that cause of action (Entry 6) are **granted**.

**IT IS SO ORDERED**.

S/ Margaret B. Seymour  
United States District Judge

December 1, 2006  
Columbia, South Carolina